**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PORTUS SINGAPORE PTE LTD and PORTUS PTY LTD., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 23-977-JLH-CJB |
| SCHNEIDER ELECTRIC USA, INC., | ) ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Presently pending before the Court in this patent infringement case is Defendant

Schneider Electric USA, Inc.'s ("Schneider" or "Defendant") motion seeking dismissal of

Plaintiffs Portus Singapore Pte LTD and Portus Pty Ltd.'s (collectively, "Portus" or "Plaintiffs")

First Amended Complaint ("FAC"), filed pursuant to Federal Rule of Civil Procedure 12(b)(6)

(the "Motion"). (D.I. 24) For the reasons that follow, the Court recommends that Schneider's

Motion be GRANTED-IN-PART and DENIED-IN-PART.

**I. BACKGROUND**

**A. Factual Background**

Portus developed technology establishing the "smart home[;]" this technology allows

users to monitor and control their homes while away, as well as to understand and manage

household energy use. (D.I. 16 at ¶¶ 12-13) Portus asserts two patents in this case: United

States Patent Nos. 8,914,526 (the "'526 patent") and 9,961,097 (the "'097 patent" and

collectively with the '526 patent, the "asserted patents"). (*Id.* at ¶ 18) The '526 patent is entitled

"Local and Remote Monitoring Using a Standard Web Browser" and it issued on December 16,

2014.  ('526 patent at 1)[1]  The '097 patent is entitled "System for Remote Access of a User Premises" and it issued on May 1, 2018.  ('097 patent at 1)  The asserted patents have the same specification, which describes a security system that permits a user to monitor her home (or other location) remotely over the internet.  ('526 patent, Abstract)

The FAC alleges that Schneider provides several "cloud based solutions[—]Building Management, Power Management, Access Control, and Video Management" that monitor and control numerous on-premise devices including cameras, thermostats, power meters, power supplies, lighting controls and door locks.  (D.I. 16 at ¶ 60)  It asserts that Schneider sells these systems "under the brand names of the Multi[S]ight platform, EcoStruxure, Conext, Wiser and Wiser Air, and EVlink" that embody some of the accused products (the "Accused Products").  (*Id.*)  Portus alleges that the Accused Products directly infringe claim 57 of the '526 patent and claim 1 of the '097 patent (the "asserted claims").  (*Id.* at ¶¶ 75, 77, 100-01)  Further, Portus alleges that Schneider indirectly infringes claim 57 of the '526 patent.  (*Id.* at ¶ 92)

**B.    Procedural Background**

Portus filed its initial Complaint on September 5, 2023.  (D.I. 1)  Schneider filed a motion to dismiss the initial Complaint, (D.I. 10), and Portus thereafter filed the operative FAC on January 12, 2024, (D.I. 16).  In lieu of filing an answer, on April 25, 2024, Schneider filed the instant Motion.  (D.I. 24)  The Motion was fully briefed as of June 20, 2024.  (D.I. 32)  On May 3, 2024, United States District Judge Jennifer L. Hall referred this case to the Court to hear and resolve all pretrial matters, up to and including the resolution of summary judgment motions.  (D.I. 26)

---

[1]       The asserted patents are attached as exhibits to the FAC.  (D.I. 16, exs. A-B)  Herein, the Court will cite to the patents by their patent numbers.

Further relevant facts related to resolution of the Motion will be discussed as needed in Section III.

## II.    STANDARD OF REVIEW

The sufficiency of pleadings for non-fraud claims is governed by Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court conducts a two-part analysis.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions."  *Id.* at 210-11 (citation omitted).  Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).[2]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  In assessing the plausibility of a claim, the court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

## III.    DISCUSSION

---

[2]    In resolving a motion to dismiss, a court typically considers the allegations in the complaint, the exhibits attached thereto, documents or facts that are incorporated by reference into the complaint or that are otherwise integral to the complaint's allegations, matters of public record and items for which the court can take judicial notice.  *See Siwulec v. J.M. Adjustment Servs., LLC*, 465 F. App'x 200, 202 (3d Cir. 2012); *ING BANK, fsb v. PNC Fin. Servs. Grp., Inc.*, 629 F. Supp. 2d 351, 354 (D. Del. 2009).

In its opening brief, Schneider argued that Portus has insufficiently pleaded its claims of direct and indirect infringement.  (*See generally* D.I. 25)  The Court will consider these arguments in turn below.

### A.    Direct Infringement

35 U.S.C. § 271(a) provides for a cause of action for direct patent infringement.  Under the statute, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  35 U.S.C. § 271(a).

A complaint sufficiently pleads direct infringement when the allegations provide the defendant with "fair notice of infringement of the asserted patents."  *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018).  At the pleading stage, a plaintiff is not required to prove its case, *Nalco Co. v. Chem-Mod, LLC,* 883 F.3d 1337, 1350 (Fed. Cir. 2018), and "[s]pecific facts are not necessary to support every allegation in the complaint[,]" *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 39 (Fed. Cir. 2024) (internal quotation marks and citation omitted).  Rather, the complaint must contain "some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).  A plaintiff therefore cannot assert a plausible claim for infringement by "reciting the claim elements and merely concluding that the accused product has those elements."  *Id.*  But a plaintiff need not "plead infringement on an element-by-element basis."  *Id.* at 1352.  The United States Court of Appeals for the Federal Circuit has explained that "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any

given element to practicing the asserted claim(s), and the nature of the allegedly infringing device."  *Id.* at 1353; *see also AlexSam*, 119 F.4th at 39.[3]

In making their arguments relating to direct infringement, the parties treat claim 57 of the '526 patent as exemplary.  (*See, e.g.*, D.I. 16 at ¶ 101; D.I. 25 at 7 & n.6; D.I. 29 at 9, 11)  Claim 57 is a claim to a system that includes the following basic components:  (1) a user premises network; (2) a network external to the user's premises which includes a "hardware user access browser device"; and (3) processing circuitry that allows the hardware user access browser device to access information stored on the user premises network.  ('526 patent, cols. 16:66-17:56; *see also* D.I. 25 at 3)  The user inputs "Uniform Resource Locators (URL)" into the user access browser to locate and examine information regarding the user premises network.  ('526 patent, col. 17:17-19)  In full, claim 57 recites:

> **57**. A system for remote access of user premises networks in respective user premises, the system comprising:
>
> a first network (a) located external to said user premises, (b) including a first arrangement of processing circuitry comprising at least one hardware processor programmed to control network access, and (c) including a *hardware user access browser device that comprises a processor running an access browser*; and
>
> a plurality of second arrangements of processing circuitry each comprising at least one hardware processor programmed to control network access, each of at least a subset of which is located in a respective one of the user premises and part of the respective user premises network of the respective user premises;
>
> wherein:
>
> said first circuitry arrangement is adapted by its programming to initiate an establishment of network connections to said second circuitry arrangements;

---

[3]     The law of the Federal Circuit applies to the question of whether a complaint states a plausible claim of patent infringement.  *AlexSam*, 119 F.4th at 35.

the user access browser located on the first network is usable, by input of Uniform Resource Locators (URL), for locating and examining information on said first network and said user premises networks;

each of the at least the subset of second circuitry arrangements is accessible by the first circuitry arrangement;

responsive to user-input of a URL in accordance with which said user access browser accesses a predetermined location on said first network to which address the URL corresponds, said first circuitry arrangement subsequently, by execution of its programming:

determines which one of said user premises networks in which one of said second circuitry arrangements is located authorization data indicates authority to at least one of monitor and control; and

initiates an establishment of a network connection to said one of said second circuitry arrangements to create a new communications session for a temporary interconnection between said first network and said determined one of said user premises networks to at least one of control and monitor operation of at least one of the one or more devices of said user premises network, by which communications session the first network:

obtains information contained within the user premises network from the second circuitry arrangement of the determined user premises network; and

using a web server, serves to the user access browser the information from the second circuitry arrangement of the determined user premises network;

the communications session provides a seamless access to information stored on said determined one of said user premises networks from said user access browser; and

the at least one of control and monitoring of the at least one device using the first circuitry arrangement is possible only by interaction with information served by said one of said second circuitry arrangements.

(*Id.*, cols. 16:66-17:56 (emphasis added))  Schneider's primary argument for dismissal of Portus'

direct infringement claims focuses on one claim limitation:  the limitation italicized above that

requires a "hardware user access browser device that comprises a processor running an access

browser[,]" (sometimes referred to below as the "hardware user access browser device" limitation).  (*See* D.I. 25 at 7; D.I. 32 at 1)[4]

Counts I and III of the FAC allege that Schneider directly infringes the asserted claims by:  (1) *making* the Accused Products by combining all elements of the Accused Products in a manner that meets each limitation of the asserted claims; and (2) putting into service and by operating (i.e., *using*) the Accused Products when all elements of such systems are combined. (D.I. 16 at ¶¶ 75, 100)  The Court will first address the FAC's allegations that Schneider has directly infringed the asserted patents by making the Accused Products.  Then the Court will assess the FAC's claim that Schneider has directly infringed through its use of the patented system.

### 1.    Whether the FAC Plausibly Pleads that Schneider Makes the Patented System

Generally, to "make" a patented device under § 271(a), a *single entity* must "combine all of the claim elements[.]"  *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1288 (Fed. Cir. 2011); *see also, e.g.*, *CTD Networks, LLC v. Amazon.com, Inc.*, 688 F. Supp. 3d 436, 444 (W.D. Tex. 2023); *Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*, 612 F. Supp. 3d 408, 415 (D. Del. 2020).  Pursuant to the Federal Circuit's decision in *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279 (Fed. Cir. 2011), if a customer (rather than a defendant company) performs the final step to assemble a claimed system by (for example) installing certain software, then the defendant company has not

---

[4]    Claim 1 of the '097 patent recites, similarly, "processing circuitry running an access browser module[.]"  ('097 patent, col. 12:41-42)  Schneider contends that there are no material differences between these respective limitations in the '526 patent and '097 patent for purposes of its Motion, and Portus does not dispute this.  (D.I. 25 at 7 n.6; D.I. 32 at 1 n.1) Therefore, the Court will focus on the "hardware user access browser device" limitation, and its conclusions will apply to both the '526 patent and '097 patent.

infringed, because it is the customer who directly infringes by completing the system.  631 F.3d at 1288; *see also Acceleration Bay LLC*, 612 F. Supp. 3d at 415.

Schneider asserts the FAC does not plausibly plead direct infringement because Portus does not (and cannot) allege that *Schneider itself* combines all of the claim elements—since Schneider does not make (or sell) the hardware user access browser device required by the claims.  (D.I. 25 at 7; D.I. 32 at 1-2)  According to Schneider, the FAC alleges that Schneider infringes this limitation because its Accused Products connect the web browser of *the user's smartphone* to a system in the user's premises, such as a security system—thus allowing the user to obtain information about the premises by using her smartphone to access Schneider's "App." (D.I. 25 at 3 (citing D.I. 16 at ¶¶ 60, 62-63, 67, 69-72))  As such, Schneider argues that the FAC's allegations "all require a *user* to provide their *own cellphone* or other external device" for use with the claimed system.  (*Id.* at 3 n.4, 7 (emphasis added))  And because the FAC does not (and cannot) allege that Schneider makes a smartphone or any other hardware device capable of running an "access browser," Schneider says that the FAC's direct infringement claims relating to "making" the Accused Products must be dismissed.   (*Id.* at 7 (citing *Centillion*, 631 F.3d at 1286-88)).

Portus pushes back, arguing that it is simply wrong to say that the FAC's direct infringement allegations are limited to systems that require an end user's smartphone.  (D.I. 29 at 1, 3-5, 7)  It asserts that the FAC shows how Schneider makes all components of the Accused Products—in that the pleading claims that Schneider makes infringing systems with *stand-alone control devices* (i.e., "monitors/receivers/panels") that can constitute the necessary "hardware user access browser device."  (*Id.*)

So how does the FAC supposedly allege that Schneider itself makes certain stand-alone control devices and that those devices are part of the infringing system?  In answering that question, Portus takes two tacks.

First, Portus claims that the FAC identifies these devices as monitors that are pictured in certain of the FAC's allegations regarding the ExoStruxure Platform and the Conext solar and storage system, respectively.  In its brief, Portus refers to these devices as "Schneider Access Browser Device[s]"—and it identifies them as at least the SmartX monitor (pictured in a diagram in paragraph 63 of the FAC, where it has the title "SmartX AD Local HMI") and the Conext SCP monitor (pictured in paragraph 64 of the FAC, where it is identified as "Conext™ SCP").  (*Id.* at 3-4 (citing D.I. 16 at ¶¶ 63-64))  Second, Portus notes that the FAC also attaches claim charts mapping the Accused Products to the limitations of claim 57—and it points to an excerpt therein alleging that:

> The Accused Instrumentalities include (c) a hardware user access browser device that comprises a processor running an access browser.  For example, Schneider servers and Cloud are accessible by a user through the Schneider System Apps or *Schneider Access Browser Device, such as a monitor or receiver, computer and browser, or app.*

(D.I. 16, ex. C at 17 (emphasis added) (*cited in* D.I. 29 at 4); *see also, e.g.*, *id.* at 56 ("[T]he system provides such information (e.g., authorization data or videos and control and monitoring information) to the Schneider System Apps *or access browser on the Schneider Access Browser Device*") (emphasis added) (*cited in* D.I. 29 at 5))  In sum, Portus is saying that these two sets of references to the system's use of a "Schneider Access Browser Device" (in paragraphs 63 and 64 on the one hand, and in the attached claim charts on the other) amount to plausible allegations that Schneider itself makes a component reading on the  "hardware user access browser device" limitation.

9

Yet in the Court's view, and for the reasons set out below, these allegations/claim chart excerpts do not do the work that Portus requires of them. That is, they do not sufficiently and plausibly assert that specific monitors from the Accused Products, made by Schneider, satisfy the hardware user access browser device limitation.

The Court first addresses Portus' argument regarding the SmartX monitor and the Conext SCP monitor. (D.I. 29 at 3) Although Portus' briefing asserts that the FAC identifies these as examples of the Schneider Access Browser Device, in fact that is not really so. Instead, in paragraphs 63 and 64, Portus simply included screenshots of certain images and descriptions of the ExoStruxure Platform and Conext solar and storage system, spanning several pages. And those paragraphs: (1) call no special attention to these alleged Schneider monitors; (2) do not actually state that such monitors *are* exemplary "Schneider Access Browser Device[s]"; and (3) nowhere explain *why* that is plausibly so. (D.I. 16 at ¶¶ 63-64; *see also* D.I. 32 at 3-4 (Schneider noting, for example, that "there are no allegations about what a SmartX AD Local HMI is [or] whether it could be a hardware access device" and that "Portus has failed to make a sufficient allegation about the Conext SCP to support an infringement claim"))

Additionally, Portus' citations to the attached claim charts are also not helpful to it. The difficulty with those allegations is in how vague and non-specific they are. There, Portus alleges that the identified "Schneider Access Browser Device" is a "monitor or receiver, computer and browser, or app." (D.I. 16, ex. C at 17) Well, which is it? That is, what piece of Schneider technology is being accused here exactly? This lack of detail is even more of an issue because in the *body of the FAC*, the pleading asserts that the Accused Products generically "allow control and monitoring of devices *through an internet web browser or smartphone applications such as . . . the Schneider Apps*[.]" (D.I. 16 at ¶ 60 (emphasis added); *see also, e.g.*, *id.* at ¶ 77(a)

(indicating that the hardware user access browser device limitation is met through the use of Defendant's "System Apps"))  So if the attached claim charts are meant to suggest that something *other* than a user's smartphone (interacting with a web browser or Schneider's App) can meet the "hardware user access browser device" limitation—like a Schneider "monitor"— then the FAC needs to include at least some additional factual allegations that help explain *why that is so*.  In the absence of such allegations, the Court does not see how Portus has plausibly alleged how Schneider itself combines all of the claim elements—as is required to plead that Schneider directly infringes the asserted claims by making the Accused Products.  *See, e.g.*, *CTD Networks, LLC*, 688 F. Supp. 3d at 444-46 (holding that the plaintiff's claims of direct infringement must be dismissed where, *inter alia*, "[p]laintiff does not allege that [d]efendant manufactures the hardware used to [operate] the claimed systems.").

The Court therefore recommends that the Motion be granted with respect to Portus' allegations that Schneider directly infringes the asserted claims by making the Accused Products. That said, it seems possible that Portus might be able to plead the missing allegations in a further amended complaint.  In light of this, and in light of Federal Rule of Civil Procedure 15's admonition that leave to amend should be freely permitted "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), the Court will recommend that such dismissal be without prejudice.

### 2.    Whether the FAC Plausibly Pleads that Schnieder Uses the Patented System

The Court next turns to the FAC's allegations regarding Schnieder's alleged infringing use of the patented system.  "[T]o 'use' a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." *Centillion*, 631 F.3d at 1284 (citations omitted).  Additionally, "direct infringement by use of a system claim requires a party . . . to use each and every . . . element of a claimed [system]."  *Id.*

(internal quotation marks and citation omitted).  Accordingly, "to use a system, a person must control (even if indirectly) and benefit from each claimed component." *Intell. Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017).  The benefit cannot be general, amounting to merely an assertion that the accused infringer "benefits from the claimed system as a whole[.]" *Grecia v. McDonald's Corp.*, 724 F. App'x 942, 947 (Fed. Cir. 2018).  Instead, "[t]he alleged benefit should be tangible, not speculative, and tethered to the claims." *Id.*

Schneider's argument for dismissal of Counts I and III on this ground is that since the FAC demonstrates that its *customers* must carry out important elements of the claimed system—such as by using their smartphones to (1) input a URL into the access browser, (2) enter login credentials to access Defendant's apps and (3) remotely access the home network—then Schneider itself does not *use* each and every element of the patented system.  (D.I. 25 at 7-8); *see, e.g.*, *Centillion*, 631 F.3d at 1286 ("Supplying the software for the customer to use is not the same as using the system.").[5]  The Court agrees with Schneider that the FAC does not sufficiently plead Schneider's use of the Accused Products.

---

[5]    In making this argument, Schneider relies on this Court's decision in *Portus Singapore Pte Ltd. v. SimpliSafe, Inc.*, C.A. No. 19-480-LPS-JLH, 2019 WL 6071180 (D. Del. Nov. 15, 2019), (D.I. 25 at 8), in which this Court found that Portus' direct infringement allegations asserting various claims of the '526 patent and '097 patent against a different defendant, SimpliSafe, Inc. ("SimpliSafe"), were insufficiently pleaded.  2019 WL 6071180, at *5.  In that case, Portus alleged that SimpliSafe directly infringed the asserted patents through "use" of its accused home security systems.  *Id.* at *4.  There, the operative complaint only identified SimpliSafe's customer as using the required remote access device (e.g., a smartphone or mobile device) that could connect to the internet; it did not allege any facts "supporting the contention that SimpliSafe itself uses the claimed remote access device in connection with operation of the claimed systems." *Id.* at *5.  In the absence of such facts (nor any facts suggesting that SimpliSafe controlled a user's remote access device or put such a device into service), this Court concluded that Portus had failed to plausibly plead that SimpliSafe used the claimed systems within the meaning of Section 271(a).  *Id.*

Again, "[t]o plead system infringement by 'use,' [Portus] must plead that [Schneider] controls and benefits from each element in" the asserted claims. *Traxcell Techs. LLC v. Google LLC*, Case No. 22-cv-04807-JSC, 2022 WL 17072015, at *3 (N.D. Cal. Nov. 17, 2022). Here, Portus has not done so, because (as discussed above) the FAC's allegations clearly establish only that *Schneider's customers* supply the hardware user access browser device required to put the relevant systems into service. *See Portus Singapore Pte Ltd. v. SimpliSafe, Inc.*, C.A. No. 19-480-LPS-JLH, 2019 WL 6071180, at *5 (D. Del. Nov. 15, 2019) ("*SimpliSafe*"); *see also Traxcell Techs. LLC*, 2022 WL 17072015, at *3 (finding that the plaintiff failed to plausibly allege the defendant's use of the patented system, where the complaint asserted that the defendant provided software that a user then configured to practice the asserted claim). And so, the FAC does not plausibly plead that Schneider controls and benefits from the hardware user access browser device component of the system at issue.

Portus makes three arguments to the contrary. None are persuasive.

First, Portus says that claim construction of the term "hardware user access browser device that comprises a processor running an access browser" must occur before any conclusion can be made about Portus' allegations of direct infringement via use. (D.I. 29 at 9, 11-12) Portus' argument on this point in its briefing was a little hard to parse, but it appears to go as follows: (1) the claim term "hardware user access browser device that comprises a processor *running* an access browser" does not actually require the use of "user hardware" in the form of a hardware device; (2) instead, this term somehow allows that the system can receive information from a user's hardware device without actually requiring the use of said device; and (3) in order to determine whether this argument is correct, the Court would first have to construe the term; so

13

(4) since a Court should not typically be performing claim construction at the motion to dismiss stage, then Schneider's Motion should fail on this ground.  (*Id.*; *see also* D.I. 32 at 6-7)

The Court disagrees.  The claim construction process is not needed for one to observe that claim 57 clearly and facially claims "a first network" that includes, *inter alia*, "a *hardware* user access browser *device*[.]"  ('526 patent, col. 17:1-5 (emphasis added))  If someone is going to "use" that kind of a system, then they have to use a hardware device in some way.  Put differently, no *Markman* process could possibly result in a ruling that this claim limitation can be satisfied by something other than the use of a "device" that includes "hardware" (and a "processor" that runs an access browser).  (D.I. 32 at 6-7 (asserting that Portus' argument here is "nonsensical as claim 57 specifically recites a hardware component—the "*hardware* user access browser *device*") (emphasis in original)); *cf. Cumberland Pharms. Inc. v. Sagent Agila LLC*, C.A. No. 12-825-LPS, 2013 WL 5913742, at *2-3 (D. Del. Nov. 1, 2013) (finding that the complaint failed to plausibly plead infringement, where all claims covered only a formulation "free from a chelating agent," but the complaint alleged that the defendant's product contained a chelating agent, as "[n]o claim construction is necessary in order to determine that 'free from a chelating agent' means that a claimed composition may not include a chelating agent"); *see also Olink Proteomics AB v. Alamar Bioscis., Inc*., Civil Action No. 23-1303-MN, 2025 WL 275604, at *7 n.7 (D. Del. Jan. 23, 2025) (noting other cases like *Cumberland Pharms*.).

Second, Portus suggests it has sufficiently pleaded that Schneider "uses" the claimed system because it has shown how Schneider benefits from each and every claim limitation—in the sense that Schneider allegedly requires that system users agree to certain terms and conditions allowing Schneider to collect their personal data in order to access the system.  (D.I. 29 at 10 (citing D.I. 16 at ¶¶ 80-82, 103-05))  In its briefing, Portus asserts that every element of

claim 57 allows for the provision of different types of such valuable customer information to Schneider, which Schneider then uses to improve the Accused Products. (*Id.*) Portus also argues that Schneider obtains the benefit of each and every limitation of the claimed system from revenues that it receives from the sale of the Accused Products and subscriptions to cloud services. (*Id.*)

But none of this actually pleaded in the FAC. The FAC does not allege how Schneider benefits in this way from *each and every claimed component* (such as by alleging something like "each element of claim 57 provides valuable information to Schneider as follows. . . "). Instead, the FAC simply makes a general allegation to the effect that a user of Schneider's products must agree to certain terms and conditions that allow Schneider to track content and access personal information about the user. (D.I. 16 at ¶¶ 80-81, 103-04) That type of broad, general allegation is insufficient to plead that an alleged infringer is benefitting from use of a claimed system like this one. *See SimpliSafe*, 2019 WL 6071180, at *5 n.5 ("A general benefit not tethered to the claim language is insufficient to state a direct infringement claim based on use."); *cf. Acceleration Bay LLC v. Activision Blizzard, Inc.*, 324 F. Supp. 3d 470, 483 (D. Del. 2018) (explaining (at the summary judgment stage) that pointing to "general financial benefits and vague technological benefits" is not sufficient to establish use of the infringing system, where there was no showing that the benefits at issue were addressed on an "element-by-element" basis). And again, even if Portus *had* made sufficient allegations regarding such benefits, in the absence of pleading how Schneider "controls" all of the elements in the asserted claims, Portus' position here could not win the day. *See Intell. Ventures I LLC*, 870 F.3d at 1329 (explaining that to use a system, an entity must control *and* benefit from each claimed component); *Traxcell Techs.*, 2022 WL 17072015, at *4 n.2 ("Because [p]laintiff fails to explain how Google

15

'controls' the elements in Claim 1, the Court need not address Google's motion to dismiss based on the 'benefit' prong of the system use analysis[.]").

Third, Portus argues that it pleaded facts setting out Schneider's *own personal use* of the Accused Products, which is sufficient to set out a claim for direct infringement by use of a system. (D.I. 29 at 13 (citing *Saphire Crossing LLC v. Robinhood Mkts., Inc.*, Civil Action No. 18-1717-MN-CJB (Consolidated), Civil Action No. 20-726-MN-CJB, 2021 WL 149023, at *4 n.4 (D. Del. Jan. 15, 2021)). In support, Portus points to certain screenshots in the FAC (drawn from content published in Schneider's instructional and marketing materials) that allegedly show "instances of Schneider using the Accused Products." (*Id.* (citing D.I. 16 at ¶¶ 63, 65, 68; *id.*, ex. C at 32)) But again, the problem here is that nowhere in the FAC does Portus *actually allege*— that is, actually come out and say—that Schneider (as depicted in those screenshots or otherwise) personally uses the accused system. (D.I. 32 at 7) Portus' failure to clearly plead this allegation means that it has not sufficiently put Schneider on notice of any such direct infringement theory.[6]

The Court therefore recommends that the Motion be granted with respect to Portus' claims of direct infringement by "use" of the patented invention. And it recommends that such

---

[6]       Schneider contends that as a matter of law, "limited and fleeting use of an accused system does not give rise to a claim of patent infringement." (D.I. 32 at 8) But the case it cites in support, *Medtronic Vascular, Inc. v. Boston Sci. Corp.*, 348 F. Supp. 2d 316 (D. Del. 2004), actually states that there is a "narrow common law exception for *de minimis non-commercial* use" of a patented invention. 348 F. Supp. 2d at 322 (emphasis added). *Medtronic* does not stand for the notion that internal testing and use of commercial products cannot amount to direct infringement, full stop. *See, e.g.*, *AOS Holding Co. v. Bradford White Corp.*, C.A. No. 18-412-LPS, 2021 WL 5411103, at *30 (D. Del. Mar. 31, 2021) ("There is, however, no *de minimis* exception to infringement, at least when such infringement is for commercial reasons."), *aff'd sub nom. A. O. Smith Corp. v. Bradford White Corp.*, No. 2021-2222, 2022 WL 3053891 (Fed. Cir. Aug. 3, 2022). Indeed, the Court has previously held that a plaintiff can pursue such claims based on internal testing (while noting that damages would be limited and tied to the internal use). *Sapphire Crossing LLC*, 2021 WL 149023, at *4 & n.4.

claims be dismissed without prejudice, since it seems possible that in an amended pleading, Portus could replead the relevant missing facts.

### B.    Indirect Infringement

Count II of the FAC alleges that Schneider indirectly infringes claim 57 of the '526 patent, via induced infringement pursuant to 35 U.S.C. § 271(b) and contributory infringement pursuant to 35 U.S.C. § 271(c).  (D.I. 16 at ¶¶ 92, 94)  In Count II, the direct infringers of claim 57 are said to be Schneider's "customers, agents or other third parties" or its "customers and end users" who make use of the Accused Products.  (*Id.*)  With its Motion, Schneider does not claim that Count II's allegations of direct infringement by these third parties are wanting.

But Schneider does seek dismissal of Count II.  Relevant to its argument there is that in order to successfully plead both induced and contributory infringement, a plaintiff must plausibly allege that, *inter alia*, the defendant had knowledge of the asserted patent and knowledge that the acts at issue constituted patent infringement.  *See, e.g.*, *Bench Walk Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468, 491 (D. Del. 2021) (citing cases).  Schneider argues that the FAC fails to plausibly allege that it had pre-suit knowledge of the '526 patent, and thus that Portus' indirect infringement claim must be dismissed.[7]

With respect to Schneider's pre-suit knowledge, the FAC alleges that from 2002 to 2011 (that is, prior to the issuance of the '526 patent in December 2014) Portus had various communications with representatives from:  (1) Schneider; (2) another entity known as "Schneider Electric Ventures"; and (3) a third company known as "Clipsal" that was later

---

[7]    Schneider posits that the '526 patent expired on January 23, 2023 for failure to pay a maintenance fee, and so Schneider's post-suit knowledge of its alleged infringement of the patent is irrelevant (since Portus did not institute this action until eight months later, in September 2023).  (D.I. 25 at 2, 11-12)  Portus does not dispute this, and it only makes arguments regarding pre-suit knowledge.  (D.I. 29 at 14-17)

acquired by Schneider in or around 2003. (D.I. 16 at ¶¶ 53-57)  Among those communications were:  (1) an instance in 2008 wherein Portus allegedly sent Schneider an investment proposal identifying, *inter alia*, Portus' patents, after which Portus discussed the proposal with Schneider by telephone; and (2) an instance in 2011 where Portus again allegedly sent Schneider an investment presentation—one that again outlined Portus' patented technology (and that led to follow-up communications between the companies in January, May and August of that year). (*Id*. at ¶¶ 56-57)  Then Portus asserts that in 2015 (following the issuance of the '526 patent the year before):

> Portus, through a broker, alerted Schneider of its infringement of Portus' patents asserted in this lawsuit.  Schneider was sent a set of linked claim charts and, on information and belief, received claim charts outlining infringement of the Schneider MultiSight product and other similar products.

(*Id*. at ¶ 58 ("Paragraph 58"))  The FAC then alleges that "Schneider has been on notice of infringement of the '526 patent since at least 2015." (*Id*. at ¶ 59)

Schneider says that these allegations are insufficient to establish its pre-suit knowledge of the '526 patent (and its infringement of that patent) because:  (1) any communications between Portus and Schneider prior to the patent issuing in 2014 are irrelevant; and (2) there is no allegation that the claim charts sent in 2015 covered certain products accused of infringement in this lawsuit (i.e., EcoStruxure Access Expert and related products), nor that the defendant in this case, Schneider Electric USA, Inc. (as opposed to some other Schneider affiliate) was the recipient of that claim chart-related correspondence. (D.I. 25 at 10-11; D.I. 32 at 8)  As for the accused "MultiSight" product referenced in Paragraph 58, Schneider argues that Schneider never sold that product—and that it was instead always sold by third-party Pelco, Inc ("Pelco"). (D.I. 25 at 11)

The Court does not agree with Schneider.  As an initial matter, with respect to Schneider's assertion that the FAC fails to allege that *Schneider* received the 2015 claim charts (as opposed to another Schneider affiliate), that is not persuasive.  The FAC earlier indicates that all subsequent references to Defendant would be to "Schneider[,]" (D.I. 16 at ¶ 4), and Paragraph 58 states that "Schneider" is the entity that received the 2015 claim charts.  Thus, construing the FAC's allegations in the light most favorable to Portus (as the Court must at this stage), the FAC plausibly alleges that *Defendant* (and not some other related entity) received this communication and was thus then aware of the '526 patent's existence.[8]

Schneider fares no better with its position that the 2015 claim charts could not put it on notice of pre-suit infringement because *Pelco* (not Schneider) sold MultiSight.  The FAC alleges that Schneider sells the accused MultiSight platform system.  (*Id*. at ¶ 60)  And screenshots of the MultiSight product in the FAC reflect that the product bears a "Schneider Electric" logo.  (*See, e.g., id*. at ¶ 65)  This is sufficient to plead that the 2015 claim charts put Schneider on notice that the MultiSight product (which Schneider seems clearly affiliated with in some way) infringes the '526 patent.[9]

Lastly, the FAC alleges that the MultiSight product operates the same way as other Accused Products for purposes of infringement.  (*See id.* at ¶ 60)  Despite Schneider's assertion to the contrary, this allegation renders it plausible that the 2015 claim charts relating to

---

[8]     Schneider faults Portus for "provid[ing] no evidence that the defendant in this case was ever put on notice of the Asserted Patents.  Portus does not attach [the 2015] letter or claim charts to the [FAC]."  (D.I. 25 at 4)  This argument fails to appreciate that we are at the pleading stage of the case, where no *evidence* is needed.  Plausible *allegations* are sufficient.

[9]     While Schneider may ultimately be correct that Pelco, and not Schneider, sells the MultiSight product, the record is insufficient to make that determination at this stage as a matter of law.  (D.I. 29 at 15-16)

MultiSight also put Schneider on notice that its other allegedly similar products infringed the '526 patent.  (*See* D.I. 29 at 16-17)

For these reasons, the Court does not agree that the FAC insufficiently pleads Schneider's pre-suit knowledge of the alleged infringement of the '526 patent.  *See, e.g.*, *VideoLabs, Inc. v. Meta Platforms, Inc.*, 730 F. Supp. 3d 111, 127 (D. Del. 2024) (finding that the plaintiffs sufficiently pleaded that the defendants had pre-suit knowledge of their infringement, where the pleading asserted that prior to suit, the plaintiffs communicated to defendants that they had claim charts relating to defendants' backend infrastructure, and where there were allegations that the plaintiffs sent a pre-suit letter to the defendants about the defendants' alleged infringement).  The Court therefore recommends that the Motion be denied with respect to indirect infringement.

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends that the Motion be GRANTED-IN-PART and DENIED-IN-PART.  Specifically, the Court recommends that the Motion be granted without prejudice with respect to Portus' claims that Schneider directly infringes the asserted claims by making and using the Accused Products.  The Court recommends that the Motion be denied with respect to Portus' indirect infringement claim.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:  February 7, 2025

_Christopher J. Burke_
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE